1   LINDA J. SMITH (S.B. # 78238)
        lsmith@omm.com
2   ROBIN M. WALL (S.B. # 235690)
        rwall@omm.com
3   AMY R. LUCAS (S.B. # 264034)
        alucas@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, California  90067-6035
    Telephone:   (310) 553-6700
6   Facsimile:    (310) 246-6779

7   Attorneys for Plaintiff
    Hollywood Foreign Press Association

8   (*Continued on Next Page*)

9

# UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| HOLLYWOOD FOREIGN PRESS ASSOCIATION, a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> RED ZONE CAPITAL PARTNERS II, L.P., a Delaware Limited Partnership; DICK CLARK PRODUCTIONS, INC., a Delaware Corporation; DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.  CV10-8833 VBF (FMOx) <br><br> **REPORT OF THE PARTIES' PLANNING MEETING** <br><br> Scheduling Conference <br><br> Date:  January 31, 2011 <br> Time:  8:30 am <br> Judge:  Hon. Valerie Baker Fairbank <br> Room:  Courtroom 9 <br><br> Complaint filed:  November 17, 2010 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

*(Continued From Previous Page)*

2

RONALD L. OLSON (S.B. # 44597)
Ron.Olson@mto.com

3

BRADLEY S. PHILLIPS (S.B. # 85263)
Brad.Phillips@mto.com

4

MANUEL F. CACHAN (S.B. # 216987)
Manuel.Cachan@mto.com

5

MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue

6

Thirty-Fifth Floor
Los Angeles, CA 90071-1560

7

Telephone: (213) 683-9100
Facsimile: (213) 687-3702

8

9

MARTIN D. KATZ (S.B. # 110681)
mkatz@sheppardmullin.com

10

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

11

1901 Avenue of the Stars
Suite 1600

12

Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

13

14

Attorneys for Defendants,
RED ZONE CAPITAL PARTNERS II, L.P.
and DICK CLARK PRODUCTIONS, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT OF THE PARTIES'
PLANNING MEETING

**JOINT REPORT OF THE PARTIES PURSUANT TO RULE 26(f)**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1, the Court's Standing Order, and the Court's Minute Order dated December 3, 2010, Plaintiff Hollywood Foreign Press Association ("Plaintiff" or "HFPA") and Defendants Red Zone Capital Partners II, L.P. ("Red Zone") and dick clark productions, inc. ("dcp") (collectively "Defendants") jointly submit the following report under Federal Rule of Civil Procedure 26(f).

**I.      RULE 26(f) CONFERENCE**

A meeting of counsel was held in person on January 10, 2011, and attended by Linda J. Smith, Robin M. Wall, and Harrison A. Whitman of O'Melveny & Myers, LLP, counsel for Plaintiff, and Martin D. Katz of Sheppard Mullin Richter & Hampton LLP and Manuel F. Cachán and Jeslyn A. Miller of Munger, Tolles & Olson LLP, counsel for Defendants.

**II.     NATURE AND BASES OF CLAIMS AND DEFENSES**

**A.      Plaintiff's Claims**

This lawsuit centers on the Defendants' misappropriation of HFPA's sole asset—the Golden Globe Awards show—in direct violation of HFPA's rights and the parties' agreements.  For 27 years the parties interpreted the language of the agreements (although poorly drafted by dcp) in the exact same way.  Suddenly in late 2010, dcp—under new ownership—asserted that the parties had been wrong all along, and, in fact, dcp owns HFPA's production and licensing rights to the Golden Globes for however long they want.

Since 1983, HFPA has contracted with Defendant dcp to produce and license a television broadcast of the Golden Globe Awards show.  The parties' agreements gave dcp annual options to produce the show for specifically enumerated years.  Those agreements were amended from time to time, granting additional options for specific years.  And for 27 years, Defendant dcp exercised its annual options and

1  produced the television broadcast.  When dcp ran out of options, it negotiated for
2  more.

3        For example, in 1989, the parties negotiated for and HFPA granted dcp five
4  (5) additional options through 1997.  In 1993, dcp approached HFPA to negotiate
5  for additional options:  dcp presented a proposed broadcast license agreement with
6  NBC to the HFPA membership, told HFPA that any deal with NBC would be no
7  longer than 10 years (*i.e.*, through 2005), and asked HFPA for 8 additional annual
8  options to produce the awards show from 1998 through 2005.  HFPA agreed to the
9  8-year extension.  In 2001, dcp presented a proposed extension of the NBC
10 broadcast deal to HFPA, and HFPA agreed that the deal could be extended through
11 2011.  At all times, Defendant dcp appeared to conduct itself with full recognition
12 of Plaintiff's ownership of the Golden Globe Awards and in accordance with the
13 parties' contractual relationship.

14       In late 2010—with dcp's options expiring after the January 16, 2011 Awards
15 Show—all of that changed.  Under new corporate owners—Defendant Red Zone—
16 dcp asserted a novel interpretation of the parties' agreements, one that gave dcp the
17 unilateral and perpetual right to license the Golden Globe Awards show for
18 broadcast on NBC and thereby extend its right to produce the show in perpetuity,
19 regardless of the terms it had obtained from NBC.  Presumably dcp's new owner
20 and management reread the decades-old agreement and its amendments and
21 revisions—an agreement that Defendant Red Zone and dcp's current management
22 team had no involvement in negotiating, drafting, or abiding by—and seized on an
23 ambiguity in the language in order to try to assert unbounded control over HFPA's
24 sole asset.  Defendants' self-serving, revisionist interpretation is not supported by
25 the language of the contract or the 27-year course of conduct between the parties.
26 As HFPA will demonstrate in this lawsuit, Defendants' new construction is
27 certainly not what the parties intended.

28

REPORT OF THE PARTIES'
PLANNING MEETING

On September 30, 2010, Defendants purported to license the broadcast of the Golden Globe Awards show—indisputably HFPA's property—to NBC for a below-market fee in order to extend Defendants' tenure as producer of the show through 2018.  Defendants, however, could not sell that which they did not have, and HFPA never gave Defendants the right to license the Golden Globes for those years.

Indeed, in early 2010, HFPA had told Defendants in no uncertain words that Defendant dcp's options had expired and that Defendants were <u>not</u> authorized to license HFPA's property beyond the 2011 show.  Defendants assured HFPA that they "would never make a move on a network renewal or new home without your involvement," and entered into negotiations with HFPA for a new contract to replace the 1987 Agreement.  When dcp could not get everything it wanted in negotiations, it went behind HFPA's back and signed a new deal with NBC—at a sub-market rate—without the consent, approval, involvement, or even knowledge of HFPA.

Defendants' disregard of HFPA's ownership rights and their misconduct—licensing HFPA's property without its consent and in contravention of the parties' agreement—forms the basis for the majority of the claims in this suit, including trademark infringement pursuant to 15 U.S.C. section 1114, false association pursuant to 15 U.S.C. section 1125, breach of contract, request for declaratory relief, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unfair competition pursuant to section 17200 of the California Business and Professional Code, and the timely request for reformation in the event the Court determines that the parties were mistaken as to the meaning of the 1993 Amendment.  In particular, with respect to its fiduciary duty claim, Plaintiff has alleged that it entrusted dcp with its property—the Golden Globe Awards—in order to produce the show, and dcp violated that trust and confidence by improperly exploiting its rights and falsely claiming control over that property to third parties.

REPORT OF THE PARTIES'
PLANNING MEETING

1    As will be discussed below, defendants try to use plaintiff's eleventh claim in

2  the complaint for reformation as HFPA's concession that the parties' agreements

3  needed four more words all along in order to mean that dcp could not remain as

4  producer of the Golden Globes so long as NBC bought the broadcast rights. Not so.

5  While poorly drafted by dcp and internally inconsistent, both parties to this

6  litigation have always interpreted the Golden Globe Awards Show agreements in

7  the exact same way—until late 2010.

8    Apparently, Defendants' wrongful conduct did not end with the attempt to

9  assert control in perpetuity over the Golden Globe Awards show.  As HFPA

10  subsequently discovered, Defendants have engaged in other misconduct, acting as if

11  the awards show was theirs, not HFPA's.  For example, Defendants improperly

12  filed numerous copyright registrations related to the Golden Globe Awards that

13  neglected to name HFPA as a co-claimant; interfered with HFPA's ability to license

14  digital rights in the Golden Globes by falsely representing to third-parties that

15  Defendants controlled those rights; failed to account for the revenue from

16  sponsorships that Defendants had concealed from HFPA; encumbered the parties'

17  joint copyrights without properly accounting to HFPA; deducted impermissible

18  production costs and expenses when distributing profits from the Golden Globes;

19  failed to disclose and  pay the full compensation owed to HFPA by virtue of

20  licenses granted to Six Flags and other entities; and improperly apportioned

21  licensing fees when dcp sold the Awards Show as part of a package bundled with

22  other, less popular programming.  This misconduct forms the basis for HFPA's

23  intentional interference with prospective economic advantage, false association

24  pursuant to 15 U.S.C. section 1125, breach of contract, and accounting claims.

25  Defendants also contend that a now-expired agreement between the parties

26  regarding the 1999 Golden Globe Pre-Show is still in effect and Plaintiff's

27  disagreement forms the basis, in part, for HFPA's request for declaratory relief.

28

- 4 -

1   Defendants conduct is wrongful, violates federal and state statutes as well as
2   California common law, and is in conscious disregard of HFPA's rights and the
3   parties' negotiated contractual relationship.  Only declaratory relief and monetary
4   damages will make HFPA whole and clear the clouded title to HFPA's property.

5   In response to the Complaint, Defendants have filed a motion to dismiss that
6   contends the contract language unambiguously—and as a matter of law—gives
7   them the right to unilaterally extend the NBC broadcast license in perpetuity, and
8   thereby unilaterally extend their right to produce the awards show.  As Plaintiff will
9   fully address in opposition, Defendants' new reading of the contract is inconsistent
10  with its plain language and does not reflect the parties' intent.  Moreover, the
11  parties' course of conduct over 27 years fully corroborates Plaintiff's understanding
12  of the agreement—an understanding that Defendant dcp shared until it abandoned
13  that mutual understanding last year.

14  **B.    Defendants' Response**

15  Pursuant to this Court's Standing Order, Defendants provide the following
16  "concise statement" of their claims and defenses:  On January 7, 2011, Defendants
17  filed a motion to dismiss certain of Plaintiff's causes of action.  As explained more
18  fully in the motion to dismiss, the majority of Plaintiff's Complaint—including the
19  first, second, fourth (in part), fifth, and ninth causes of action—fail as a matter of
20  law because they are contradicted by the fully-integrated agreements entered into
21  by dcp and HFPA.  These agreements, which were negotiated by sophisticated
22  parties, state that HFPA grants to dcp "additional, consecutive, exclusive, and
23  irrevocable options" to produce the Golden Globe Awards "for any extensions,
24  renewals, substitutions or modifications of the NBC Agreement."  dcp acted
25  according to the unambiguous language of this agreement when it amended the
26  NBC agreement to provide for Awards shows through 2018.  Plaintiff has not
27  alleged any ambiguity in this language or suggested the existence of extrinsic
28  evidence to support its allegation that the HFPA should be able to effectively veto

- 5 -

1    dcp's exercise of its options to produce the Awards Show with NBC.  Thus, this is a

2    straightforward dispute involving the unambiguous words of a contract to which the

3    parties have hewed for decades, and Plaintiff's claims fail as a matter of law.

4          In addition, Plaintiff's eighth cause of action (breach of fiduciary duty) fails

5    because HFPA has not alleged facts sufficient to show the existence of a fiduciary

6    relationship.  Finally, Plaintiff's eleventh cause of action (reformation) is time-

7    barred because the three-year statute of limitations period for claims grounded in

8    mistake began to run in 1993, when the Main Show Agreement was amended, and

9    thus expired in 1996.

10   **III.   SUBJECT MATTER JURISDICTION**

11         Plaintiff believes that this Court has original subject-matter jurisdiction over

12   the parties' federal claims pursuant to 28 U.S.C. sections 1331 and 1338(a), the

13   Lanham Trademark Act, 15 U.S.C. section 1121, and the Copyright Act, 17 U.S.C.

14   section 201(a).  Plaintiff further contends that the Court possesses supplemental

15   jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. section 1367(a).

16   Defendants have not challenged Plaintiff's assertions of federal jurisdiction, at least

17   insofar as the foregoing claims remain in the case.

18   **IV.   SETTLEMENT**

19         Pursuant to Local Rule 16-15.4, and the Court's December 3 Minute Order,

20   the parties have agreed to engage in Settlement Procedure No. 3 and have attached

21   the ADR-1 Form to this joint report.  The parties have not yet scheduled the

22   mediation proceeding, but will do so in accordance with Local Rule 16-15.2 and

23   this Court's Scheduling and Case Management Order.

24   **V.   DISCOVERY PLAN**

25         **A.   Initial Disclosures**

26         Pursuant to the Court's Standing Order and Rule 26(a)(1)(C), the parties will

27   exchange the information required by Federal Rule of Civil Procedure 26(a)(1) on

28   or before January 24, 2011.

REPORT OF THE PARTIES'
PLANNING MEETING

1

## B.    Commencement of Discovery

2

### 1.    Plaintiff's Position

3    Plaintiff believes that discovery should commence immediately and cannot

4  be postponed for months until the operative pleadings are settled as Defendants

5  propose.  Under the accelerated schedule proposed by Plaintiff, there will not be

6  sufficient time to obtain, review, compel, and conduct the necessary discovery prior

7  to the cut-off date if the start of discovery is delayed until after the Court's March

8  decision on defendants' motions to dismiss.  Under the hyper-truncated schedule

9  proposed by the Defendants, any delay in the start of discovery would make

10  meaningful fact development impossible.  This is the case even if the discovery is

11  limited to what Defendants would view as the "remaining claims" after a complete

12  victory on their motions. If Defendants' motions are denied (as Plaintiff's fully

13  expect) or if the motions are granted in part and denied in part or if Plaintiff is

14  granted leave to amend, this will start the motion practice anew.  Moreover,

15  Defendants' theory of discovery—that it should await resolution of any motions to

16  dismiss—would countenance further delay if when Defendants answer they file

17  counterclaims, which Plaintiff can be expected to move to dismiss. It is conceivable

18  that the operative pleadings in this lawsuit will not be settled until early this

19  summer.

20    More importantly, Plaintiff believes that Defendants' motion to dismiss is

21  without merits, and that Plaintiff's contract and related claims will remain in the

22  case.  It is presumptuous for the Defendants to advise the Court before their

23  motions to dismiss are even opposed that discovery is unnecessary because they

24  will prevail.  The allegations in the complaint raise serious factual disputes

25  regarding the conduct of the parties' contractual relationship.  For example, the fact

26  alleged in the complaint and supported by emails cited therein that the parties spent

27  2010 attempting to negotiate a new contract—which would not have been necessary

28  if as Defendants argue the previous contract was still in effect and unambiguous on

REPORT OF THE PARTIES'
PLANNING MEETING

its face—should be sufficient indication that there are facts at issue here and that discovery should not be stayed until March.  While it would always be convenient for defendants to refuse discovery until their motions to dismiss are resolved (whatever their merit) that is neither practicable nor efficient, and here would serve only to delay discovery on the central issues of this lawsuit.

Furthermore, given the parties' initial disagreement regarding the appropriate scope of discovery, it is likely that there will be discovery disputes over Plaintiff's requests for production.  While both parties will endeavor in good faith to resolve their differences, in the event that they cannot reach agreement, resolving each such dispute will require briefing and hearings.

As discussed below, Plaintiff believes that the need for expedited relief will become almost inevitable in this case.  Delaying the commencement of discovery will unnecessarily hamper Plaintiff's ability to seek such relief.  Moreover, if and when Plaintiff seeks such relief, everyone—both the parties and the Court—will benefit from as complete a factual record as possible.

Plaintiff plans to proceed with discovery immediately and will serve discovery requests prior to the January 31 Scheduling Conference.  At the parties' planning meeting, Plaintiff set forth its plans, after having consulted with e-discovery vendors, to collect the emails of its officers and directors not hosted on the HFPA server.  The Federal Rules and this Court's Standing Order do not contemplate a stay of discovery every time a defendant files a motion to dismiss a portion of a complaint, and Plaintiff does not believe there is any reason to change course now, particularly in this case.

## 2.   Defendants' Position

Defendants propose that discovery commence immediately after a ruling on Defendants' pending motion to dismiss, which is scheduled to be heard by the Court on March 7, 2011.  The motion to dismiss will potentially dispose of up to 7 of the 11 causes of action in Plaintiff's Complaint, completely altering the parties'

REPORT OF THE PARTIES'
PLANNING MEETING

1    anticipated discovery plans.  Commencing discovery before the Court has ruled on

2    Defendant's motion to dismiss would be costly, inefficient, and unduly

3    burdensome, because it would require the parties to expend resources investigating

4    subjects that may ultimately be of no consequence in this case.

5         Plaintiff argues that it will have insufficient time to complete discovery if

6    discovery is not commenced before March 7, when Defendants' pending motion to

7    dismiss is set for argument.  Despite Plaintiff's prolix Complaint, however, this

8    case at its heart raises a simple contractual question:  whether the parties'

9    agreement extends dcp's "consecutive, exclusive, and irrevocable options" to

10   acquire the Golden Globes beyond 2005, "for any extensions, renewals,

11   substitutions or modifications" of dcp's separate agreement with NBC, the

12   television network (as Defendants claim and as the contract plainly states), or

13   whether (as Plaintiffs allege) dcp is somehow required to seek the HFPA's

14   "approval" as a condition to exercising its contractually guaranteed options.

15   Plaintiff claims that the contract must be interpreted (or, more accurately, rewritten)

16   in light of extrinsic evidence.  Defendants disagree, and this is the core subject of

17   Defendants' pending motion to dismiss.  If the motion is granted, the remaining

18   subject matter of this case—for example, whether dcp properly registered the

19   HFPA as a co-copyright owner—will not require extended discovery, and Plaintiff

20   cannot credibly claim differently.

21        Even if Defendants' motion is not granted, the scope of any inquiry into the

22   circumstances of the contract here is unlikely to consume much time.  As indicated

23   by the parties' agreement to the standard 10-deposition limit, this case is not likely

24   to generate an unusual number of depositions.  Nor is this a case with an unusually

25   large volume of documents, and neither side believes it is "complex."  *See* VII,

26   *infra*.  (Indeed, based on the parties' meet-and-confer discussions, it appears that

27   Plaintiff's membership is diffuse, does not necessarily work from a central office,

28

REPORT OF THE PARTIES'
PLANNING MEETING

and that Plaintiff likely has very few documents available in a central repository to provide Defendants.)

## C.    Subjects for Discovery

### 1.    Plaintiff's Position

Plaintiff believes that discovery should commence immediately on the issues raised by its Complaint, including, but not limited to:

- The meaning of the 1987 Main Show Agreement, as amended by the 1993 Amendment, including the parties' contemporaneous understanding and intent, the negotiating history, representations made at the time of execution, the parties' course of conduct, the negotiations for a new agreement in 2010, the basis for Defendants' decision to renege on the parties' agreement in 2010, and other evidence of the parties' intent;

- The meaning of the 1999 Pre-Show Agreement, including the parties' contemporaneous understanding and intent, the negotiating history, representations made at the time of execution, the parties' course of conduct, any negotiations for a new pre-show agreement since 2006, and other evidence of the parties' intent;

- Defendants' knowledge of Plaintiff's understanding of the 1993 Amendment to the 1987 Main Show Agreement;

- Representations that Defendants would obtain Plaintiff's approval for any broadcasting agreement;

- Plaintiff's revocation of any and all remaining options prior to Defendants' purported exercise of such options and any extension of the NBC broadcast license, as well as Defendants' knowledge of such revocation;

- Bases for Defendants' entry into a new broadcast agreement with NBC without Plaintiff's grant of options;

REPORT OF THE PARTIES'
PLANNING MEETING

- Bases for Defendants' entry into a new broadcast agreement with NBC without Plaintiff's knowledge or authorization;

- Defendants' representations to third parties regarding the ownership of and authority to control the Golden Globe Awards show and the ancillary rights;

- Defendants' failure to properly account to Plaintiff for revenue from Golden Globe-related sponsorships;

- Defendants' treatment of Plaintiff's intellectual property;

- Defendants' efforts to conceal Golden Globe-related sponsorships from Plaintiff;

- Costs and expenses claimed by Defendants for previous Golden Globe Awards show productions;

- Defendants' improper packaging of the Golden Globe Awards show with less popular programming in foreign licensing agreements;

- Fair market value with respect to the broadcast rights for the 2012-2018 Golden Globe Awards shows;

- Defendants' efforts, or lack thereof, to obtain the highest broadcast license fee for the 2012-2018 Golden Globe Awards shows;

- Defendants' misrepresentation in February 2010 regarding the renewal of the NBC broadcast license;

- The nature and extent of Red Zone Capital Partners II, L.P.'s, or other Red Zone entities', control over and ownership of dcp; and

- Encumbrances Defendants' placed on the copyrighted Golden Globe television broadcasts.

While Defendants dispute Plaintiff's entitlement to discovery on any encumbrances placed on joint copyrighted works, Plaintiff is entitled to such discovery in connection with its Fourth and Sixth Causes of Action, which allege breach of contract in relation to these encumbrances as well as an accounting

- 11 -

related to, among other things, the various encumbrances placed on the joint works. *See Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) (recognizing a co-owners right to an accounting based on profits from use of the work).

In particular, Plaintiff is entitled to such discovery in connection with copyrights that were not registered or issued as joint as well as on any pledge or encumbrance of joint copyrights in connection with Red Zone's August 5, 2010 junk bond issuance and extraction of cash from dcp. Defendants have not moved to dismiss these portions of Plaintiff's Fourth and Sixth Causes of Action nor have they challenged the alter ego allegations, and there is no reason to delay such discovery.

### 2. Defendants' Position

Defendants agree that discovery will be necessary with respect to the following topics:

- Plaintiff's claim that Defendants failed to properly account to Plaintiff for revenue from Golden Globe-related sponsorships;

- Plaintiff's allegation that Defendants concealed Golden Globe-related sponsorships from Plaintiff;

- Costs and expenses claimed by Defendants for previous Golden Globe Awards show productions;

- Plaintiff's allegation that Defendants improperly "packaged" the Golden Globe Awards show with less popular programming in foreign licensing agreements;

- "Fair market value" with respect to the broadcast rights for the 2012-2018 Golden Globe Awards shows;

- Plaintiff's claim that Defendants were required to but did not obtain the highest broadcast license fee for the 2012-2018 Golden Globe Awards shows; and

- The nature and extent of Red Zone Capital Partners II, L.P.'s, or other Red Zone entities', alleged control over and ownership of dcp.

Defendant additionally anticipates that Plaintiff will seek discovery into the areas listed in bullet points below.  Defendants believe that discovery into these topics should be unnecessary, however, in light of their pending motion to dismiss Plaintiff's first, second, fourth (in part), fifth, and ninth causes of action (scheduled to be heard on March 7), which motion Defendants believe should and will be granted.

- The meaning of the 1987 Main Show Agreement, as amended by the 1993 Amendment, including the parties' contemporaneous understanding and intent, the negotiating history, representations made at the time of execution, the parties' course of conduct, the negotiations for a new agreement in 2010, the basis for Defendants' alleged decision to "renege" (Plaintiff's formulation, with which Defendants do not agree) on the parties' agreement in 2010, and other evidence of the parties' intent;

- The meaning of the 1999 Pre-Show Agreement, including the parties' contemporaneous understanding and intent, the negotiating history, alleged representations made at the time of execution, the parties' course of conduct, any negotiations for a new pre-show agreement since 2006, and other evidence of the parties' intent;

- Defendants' alleged knowledge of Plaintiff's understanding of the 1993 Amendment to the 1987 Main Show Agreement;

- Defendants' alleged misrepresentation in February 2010 regarding the alleged renewal of the NBC broadcast license;

- Alleged representations that Defendants would obtain Plaintiff's approval for any broadcasting agreement;

REPORT OF THE PARTIES'
PLANNING MEETING

- Plaintiff's alleged revocation of all remaining options prior to Defendants' alleged exercise of such options and any extension of the NBC broadcast license, as well as Defendants' alleged knowledge of such revocation;

- Alleged bases for Defendants' entry into what Plaintiff claims is a "new" broadcast agreement with NBC, allegedly without Plaintiff's grant of options;

- Alleged bases for Defendants' entry into what Plaintiff claims is a "new" broadcast agreement with NBC, allegedly without Plaintiff's knowledge or authorization; and

- Defendants' alleged representations to third parties regarding the ownership of and authority to control the Golden Globe Awards show and the ancillary rights; and

- Plaintiff's claim regarding Defendants' treatment of Plaintiff's intellectual property.

Plaintiff also indicates above that it will conduct discovery into "encumbrances" that Defendants supposedly placed on the copyrighted Golden Globe television broadcasts. Defendants' position is that this topic is of no relevance to any issue in the Complaint; Defendants intend to contest Plaintiff's attempt to conduct discovery into this irrelevant area at the appropriate time.

### D.   Timing of Discovery, Motions, and Trial

#### 1.   The Parties' Respective Positions Regarding Case Management And Trial

The parties disagree on the schedule for discovery, motions, and trial. The parties' respective positions are set out in the two rightmost columns below:

| Event | Plaintiff's Proposed Date(s) | Defendants' Proposed Date(s) |
|---|---|---|
| Exchange Initial Disclosures | January 24, 2011 | Same |
| Mediation | After resolution of dispositive motions, but at least 45 days prior to Final Pre-trial Conference | Same |
| The Parties' Expert Disclosures | August 12, 2011 (all parties) | June 2, 2011 for HFPA's expert disclosures June 15, 2011 for Defendants' expert disclosures |
| The Parties' Rebuttal Expert Disclosures | September 14, 2011 (all parties) | July 15, 2011 |
| Last day to for hearing on a motion for leave to amend the complaint or add parties | October 14, 2011 | August 1, 2011 |
| Non-Expert Discovery Cutoff | September 15, 2011 | September 1, 2011 |
| Expert Witness Discovery Cutoff | November 15, 2011 | July 31, 2011 (main experts) & August 15, 2011 (rebuttal experts) |
| *Daubert* Motion Hearing Date | December 9, 2012 | September 12, 2011 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPORT OF THE PARTIES'
PLANNING MEETING

| Event | Plaintiff's Proposed Date(s) | Defendants' Proposed Date(s) |
|---|---|---|
| Last Day for hearing Summary Judgment Motions, Other Motions | February 10, 2012 | October 24, 2011 |
| Final Pre-trial Conference and due date for motions *in limine* | February 24, 2012 | November 21, 2011 |
| Trial Date | March 5, 2012 | December 1, 2011 |

The parties anticipate that the trial on the merits will take between 10 and 15 courts days and that each side will each require 5 to 7 court days, respectively, to present its case.  The parties request a trial by jury.

### 2. Plaintiff's Position Regarding the Defendants' Proposed Schedules

Defendants' proposed schedule is both unreasonable and, as a practical matter, unworkable.  It provides neither party with time to prepare a minimally sufficient factual record.  Plaintiff wants to proceed as expeditiously as possible, but Defendants' proposal relies on the unrealistic assumption that the dispute can be resolved as soon as the Court grants Defendants complete victory on all of their motions to dismiss, without granting leave to amend.  This assumption—which Plaintiff strongly believes is ill-founded—is not a sound basis for the discovery schedule.

Even assuming *arguendo* that Defendants' assumption was to come true, the proposed discovery schedule is still completely unrealistic.  For example, if, as Defendants suggest, the parties wait until the Court's ruling sometime in March to commence discovery, then percipient depositions will not realistically start until

1    sometime in June 2011—after the parties have completed sufficient document
2    production and review and resolved any disputes in connection with the same.  If,
3    as Defendants propose, June 2, 2011 is the last date for Plaintiff's expert
4    disclosures, not only will the factual record not be completed, it will not include
5    any deposition testimony since none of the percipient witness depositions will have
6    started.  Defendants' proposal would eviscerate the ability of the parties' to offer
7    meaningful expert disclosures in which the expert applies his or her expertise to the
8    facts adduced both from the documents and from the testimonial evidence.

9         Further, Defendants' proposal for experts' reports and depositions is
10   condensed to the point of absurdity.  Defendants propose a "main expert" discovery
11   cutoff on July 31—one month before the percipient discovery cutoff.  Such a
12   schedule is unworkable and antithetical to the purpose of expert testimony.
13   Moreover, if the Court accepts Defendants' proposal that Plaintiff's expert
14   disclosure should come first, Plaintiff will be denied equal time to respond to
15   Defendants' experts.  Defendants schedule gives them two additional weeks to
16   prepare rebuttal experts.

17        Plaintiff proposes simultaneous expert disclosures and rebuttals due after
18   percipient discovery is concluded. In this lawsuit at least two of the subjects on
19   which experts will likely opine—the fair market value of the Golden Globe Awards
20   Show and the custom and practice in the industry with respect to contracts entered
21   into "in perpetuity"—are already known, and the expert reports will analyze the
22   factual record developed in discovery.  Experts for both parties can conduct that
23   analysis simultaneously and then file their rebuttals.

24        Finally, Defendants propose October 24th as the day for summary judgment
25   motions to be heard.  Counting backwards, this means that motions for summary
26   judgment must be prepared on or about the day percipient discovery closes.
27   Defendants' schedule, which requires the parties to prepare summary judgment

28

REPORT OF THE PARTIES'
PLANNING MEETING

1  motions while they are completing fact discovery, practically guarantees that the
2  motions will not be able to take into account the complete factual record.

3       Plaintiff's proposed schedule, while aggressive, provides realistic timeframes
4  in which to complete discovery and anticipated motion practice.

### 3.   Defendants' Position Regarding Plaintiffs' Proposed Schedules

7       Plaintiff complains that a trial in December 2011 will not permit it to prepare
8  a full factual record, particularly when it "inevitably" seeks unspecified
9  "preliminary relief" prior to the airing of next year's Golden Globe Awards show
10  (in January 2012) (*see* V.D.2, *supra*).  Yet Plaintiffs proposed trial date, in
11  December 2011—before the 2012 Golden Globe Awards show is set to air—might
12  well eliminate any occasion for Plaintiff's intended request for preliminary relief.
13  At a minimum, it will insure that the parties have prepared their factual case well in
14  advance of the time that Plaintiff's "preliminary relief" demand (whatever that may
15  mean in the context of this litigation) would likely be brought.

16       Plaintiff claims more generally that Defendants' proposed schedule—with
17  trial almost eleven months away—is impossible to meet.  But there is no reason
18  why that should be so.  Indeed, the trial date Plaintiff proposes is only three months
19  later—in March 2012, rather than December 2011.  Both parties in this matter are
20  sophisticated entities, represented by able counsel, and are more than capable of
21  preparing the straightforward issues in this case for a trial almost eleven months
22  from now.  Stretching the case out longer will only increase the parties' expenses
23  and encourage inefficient and wasteful discovery (and time-consuming and equally
24  wasteful discovery disputes).

25       Plaintiff also complains that it will be compelled to begin drafting its
26  summary judgment motion before the close of fact discovery and that this
27  guarantees the motions will not be able to take into account the complete factual
28  record.  But that is not so—summary judgment motions would not be due until the

- 18 -

REPORT OF THE PARTIES'
PLANNING MEETING

close of fact discovery, giving the parties months to develop their record before

filing the motions.  It is not uncommon for parties to begin preparing summary

judgment motions well before the close of fact discovery and to file such motions at

the close of discovery, as Defendants propose here.

### E.   Discovery Procedures

#### 1.   Parties' Position

*Limitations on Discovery:*  Plaintiff and Defendants agree that the parties will

adhere to the limit of twenty-five (25) interrogatories per party, including sub-parts,

as set forth in Federal Rule of Civil Procedure 33(a), subject to the right of any

party to seek leave to propound additional interrogatories.

The parties further agree that the presumptive limit of ten (10) depositions

per party, as set forth in Federal Rule of Civil Procedure 30(a)(2)(A), is reasonable

in this case, subject to the right of any party to seek leave of court to conduct

additional depositions.  The parties *disagree*, however, regarding whether the ten-

deposition limit should exclude Rule 30(b)(6) witnesses.  Defendants believe that

the 10-deposition limit should include 30(b)(6) witnesses which may well be for

custodians of record needed during document discovery, while Plaintiff believes it

should not and notes that Plaintiff is not limiting its 30(b)(6) depositions to records

custodians alone.

*Discovery of Electronically Stored Information:*  The parties have agreed the

format for the production of electronic documents:  electronic documents will be

produced in TIFF format, with an associated text file extracted directly from the

document (not created by an optical character recognition process) and with all

associated metadata preserved, with the exception of Excel and Powerpoint files,

which shall be produced in native file format with all associated metadata

preserved.  The parties expect that they will be able to resolve any issues that may

arise concerning the format of electronic-document production.

1    *Discovery of Confidential Information and Information Subject to Privilege:*

2    Plaintiff and Defendants have discussed and exchanged drafts of a proposed

3    stipulation and protective order regarding the production of the parties' and third

4    parties' confidential information and the format and content of privilege logs.  The

5    parties will endeavor to reach an agreement and submit such a proposal to the Court

6    for its consideration.  The parties have agreed that inadvertent production of

7    privileged information does not function as a waiver of the privilege.

8                    **2.       Plaintiff's Position**

9         *Limitations on Discovery:*  Plaintiff opposes the presumptive seven (7) hour

10   limitation on depositions given the particular nature of this case.  This lawsuit

11   concerns the parties' course of conduct over a 27-year business relationship, and the

12   depositions of percipient witnesses are expected to cover a wide range of issues that

13   span multiple decades.  For these reasons, Plaintiff believes that the presumptive

14   time limitation on depositions is not appropriate, will unduly limit the parties'

15   ability to complete its examination of witnesses in a timely fashion, will require

16   more requests to the Court for additional time, and will frustrate the parties' ability

17   to complete discovery as quickly and efficiently as possible.

18        *Discovery of Electronically Stored Information:* Plaintiff has a significant

19   concern regarding Defendants' document retention and deletion policies.  At the

20   January 10th meeting, Defendants indicated that while a document retention notice

21   had been sent to dick clark productions, inc., no such notice had been sent to

22   Defendant Red Zone Capital Partners II, L.P.  Defendants were unable to confirm

23   whether or not either of the Defendants' respective email servers automatically

24   deleted documents after a fixed period of time and, if so, whether those auto-delete

25   functions had been disabled.  Defendants have since confirmed that retention

26   notices have been distributed and that neither entity had an auto-delete policy.

27   However, Defendants have not disclosed the respective dates on which the notices

28   were distributed, which is information that would need to be disclosed on a

REPORT OF THE PARTIES'
PLANNING MEETING

1  privilege log.  Plaintiff believes that Defendants' counsel should be instructed to

2  disclose such information and take any available measures to remediate any

3  documents that have been destroyed.  At the parties' planning meeting, Plaintiff

4  detailed steps it had taken to preserve discoverable information in the possession of

5  HFPA and set forth its plans to collect the emails of its officers and directors that

6  are not hosted on the HFPA server.  In response, Defendants commented that it

7  sounded like a lot of work.

8  ### 3.    Defendants' Position

9  *Limitations on Discovery:*  Defendants believe that allowing more than 7

10  hours for depositions promotes inefficient questioning, is burdensome on witnesses,

11  and will be in virtually every case unnecessary.  Federal Rule of Civil Procedure

12  30(d)(1) already provides that additional time for questioning may be had by

13  stipulation or order of the Court on an ad hoc basis.  Defendants see no reasonable

14  basis to depart from the plain language of the Federal Rule in this case—a case that

15  the parties agree is not complex.  *See* VII, *infra.*

16  *Discovery of Electronically Stored Information:*  Plaintiff's stated concerns

17  regarding Defendants' document retention policies appear intended to fabricate a

18  discovery dispute where none exists.  As Defendants have confirmed, appropriate

19  document retention notices were sent shortly after suit was filed, well before the

20  parties' meet-and-confer on January 10.  Defendants' email servers do not contain

21  an auto-delete feature, as Plaintiff's acknowledge Defendants have confirmed.

22  Plaintiff's stated concern instead appears to be an effort to deflect attention

23  from the fact, revealed at the parties' January 10 meet and confer, that most of the

24  HFPA's members do not use the HFPA's email server to send correspondence and

25  instead employ commercial, web-based email services, and that many potentially

26  responsive documents will therefore be found (if at all) in the personal files

27  (including the personal computer files) of the HFPA's individual members—greatly

28

REPORT OF THE PARTIES'
PLANNING MEETING

1 increasing the difficulty of document collection, as well as the possibility that
2 documents have been destroyed.

3 **VI.   MOTIONS**

4 The parties propose the deadlines for filing and hearing motions indicated in
5 the schedule above.

6 **VII.   COMPLEXITY OF THE CASE**

7 The parties do not believe that this case merits designation as a complex case.

8 **VIII.   LIKELIHOOD OF ADDITIONAL PARTIES**

9 Plaintiff anticipates that it may need to add additional Red Zone and dcp
10 entities pending information revealed during discovery on its claims and alter ego
11 allegations.  The parties agree that the Court should set a deadline for the naming of
12 new parties no later than one month before the close of fact discovery.

13 **IX.   ANTICIPATED PROBLEMS**

14 **A.   Plaintiff's Position**

15 If the parties are unable to resolve their disputes substantially in advance of
16 the 2012 Golden Globe Awards show, Plaintiff anticipates that it may need to seek
17 preliminary or expedited relief from the Court, so that Plaintiff may—
18 unencumbered by the cloud created by Defendant' wrongful claim to sole and
19 perpetual possession of the production and broadcast license rights to the Golden
20 Globe Awards—locate and hire a producer, license the broadcast rights to a
21 television network, and allow sufficient time to line up sponsors and advertisers.
22 Even Defendants' unrealistically short schedule, which provides for a December
23 2011 trial, does not allow Plaintiff sufficient time to take reasonable commercial
24 steps for the production and distribution of the television broadcast of the 69th
25 Annual Golden Globe Awards Show in advance of January 8 or 15, 2012, the
26 expected broadcast dates for the show.

27

28

**B.      Defendants' Position**

Defendants agree that the prompt resolution of this matter is desirable and, accordingly, have proposed a December 1, 2011 trial date.  Defendants do not believe that there is any basis for Plaintiff seeking "preliminary or expedited relief," whatever that term may mean in the context of this case.


Dated:  January 18, 2011          LINDA J. SMTIH
                                  O'MELVENY & MYERS LLP


                                  By: /s/ Linda J. Smith
                                       Linda J. Smith

                                  Attorneys for Plaintiff
                                  HOLLYWOOD FOREIGN PRESS
                                  ASSOCIATION


Dated:  January 18, 2011          Munger, Tolles & Olson LLP
                                       RONALD L. OLSON

                                  Sheppard, Mullin, Richter & Hampton LLP
                                       MARTIN D. KATZ


                                  By:     /s/ Ron L. Olson
                                          RONALD L. OLSON

                                  Attorneys for Defendants,
                                  RED ZONE CAPITAL PARTNERS II,
                                  L.P., and DICK CLARK PRODUCTIONS,
                                  INC.