RONALD L. OLSON (State Bar No. 044597)
Ron.Olson@mto.com
BRADLEY S. PHILLIPS (State Bar No. 085263)
Brad.Phillips@mto.com
MANUEL F. CACHÁN (State Bar No. 216987)
Manuel.Cachan@mto.com
KYLE A. CASAZZA (State Bar No. 254061)
Kyle.Casazza@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

MARTIN D. KATZ (State Bar No. 110681)
mkatz@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6017
Telephone: 310-228-3700
Facsimile: 310-228-3701

Attorneys for Defendants,
RED ZONE CAPITAL PARTNERS II, L.P. and
DICK CLARK PRODUCTIONS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLYWOOD FOREIGN PRESS ASSOCIATION, a California Corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>RED ZONE CAPITAL PARTNERS II, L.P., a Delaware Limited Partnership; DICK CLARK PRODUCTIONS, INC., a Delaware Corporation,<br><br>            Defendants. | Case No. CV10-8833 VBF (FMOx)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Hearing Date: March 7, 2011<br>Time: 1:30 p.m.<br>Judge: Hon. Valerie Baker Fairbank<br>Room: Courtroom 9<br><br>Complaint filed: November 17, 2010 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. HFPA's Interpretation of the 1993 Amendment Is Implausible ........... 3

    B. HFPA's Proposed Use of Extrinsic Evidence Would Contradict the Integrated Agreement ........................................................................ 5

    C. The 1993 Amendment Is Valid Under California Law ....................... 6

    D. dcp's Options Were Not Revocable ...................................................... 7

    E. The 1999 Pre-Show Agreement Is Still in Effect ................................. 8

    F. HFPA Fails to State a Claim for Reformation .................................... 10

    G. HFPA Fails to State a Claim for Breach of Fiduciary Duty ............... 11

**DEFENDANTS' REPLY MEMORANDUM
ISO MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aagard v. Palomar Builders, Inc.*,
  344 F. Supp. 2d 1211 (E.D. Cal. 2004) .............................................................. 12

*Aschroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ..................................................................................... 2, 3

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*,
  971 F.2d 272 (9th Cir. 1992) ................................................................................ 4

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
  896 F.2d 1542 (9th Cir. 1990) ............................................................................ 10

*In re Gilead Scis. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .............................................................................. 2

*Portney v. CIBA Vision Corp.*,
  No. SACV 07-0854 AG, 2008 WL 5505517 (C.D. Cal. July 17, 2008) ........... 12

**STATE CASES**

*ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*,
  17 Cal. App. 4th 1773 (1993) ............................................................................... 5

*Bionghi v. Metro. Water Dist. of So. Cal.*,
  70 Cal. App. 4th 1358 (1999) ........................................................................... 5, 8

*Casa Herrera v. Beydoun*,
  32 Cal. 4th 336 (2004) ...................................................................................... 5, 6

*Chrisman v. So. Cal. Edison Co.*,
  83 Cal. App. 249 (1927) ....................................................................................... 7

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
  43 Cal. 4th 375 (2008) ........................................................................................ 12

*Dore v. Arnold Worldwide, Inc.*,
  39 Cal. 4th 384 (2006) ...................................................................................... 3, 4

*FPI Dev., Inc. v. Nakashima*,
  231 Cal. App. 3d 367 (1991) ................................................................................ 3

*Glascock v. Sukumlyn*,
  131 Cal. App. 2d 587 (1955) ................................................................................ 8

*Jefferson v. Pietroroia*,
  5 Cal. 2d 222 (1936) ........................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Kunstman v. Mirizzi*,
 234 Cal. App. 2d 753 (1965) ................................................................................ 11

*Laing v. Occidental Life Ins. Co. of Cal.*,
 244 Cal. App. 2d 811 (1966) ................................................................................ 11

*Lura v. Multaplex, Inc.*,
 129 Cal. App. 3d 410 (1982) .................................................................................. 7

*McGee v. Weinberg*,
 97 Cal. App. 3d 798 (1979) .................................................................................. 11

*Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*,
 69 Cal. 2d 33 (1968) ............................................................................................... 5

*Schaefer v. California-Western States Life Ins. Co.*,
 262 Cal. App. 2d 840 (1968) ................................................................................ 10

*Steiner v. Thexton*,
 48 Cal. 4th 411 (2010) ........................................................................................ 7, 8

*Stevens v. Marco*,
 147 Cal. App. 2d 357 (1956) ................................................................................ 12

*Torlai v. Lee*,
 270 Cal. App. 2d 854 (1969) .................................................................................. 8

*Wheat v. Morse*,
 197 Cal. App. 2d 203 (1961) .................................................................................. 7

*Wolf v. Super. Ct.*,
 107 Cal. App. 4th 25 (2003) ................................................................................. 12

*Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*,
 80 Cal. App. 4th 1 (2000) .................................................................................. 6, 7

**STATUTES AND RULES**

Cal. Civ. Code § 1639 ................................................................................................ 5

Cal. Civ. Code § 1641 ................................................................................................ 9

Cal. Civ. Code § 3541 ................................................................................................ 9

Cal. Code Civ. Proc. § 1856(a) .................................................................................. 5

**OTHER AUTHORITIES**

1 WILLISTON ON CONTRACTS § 5:16 (4th ed. 2010) ................................................... 7

## I.     INTRODUCTION

Plaintiff, the Hollywood Foreign Press Association ("HFPA"), seeks to manipulate California's parol evidence rules to prolong a dispute that can and should be resolved on the pleadings. While Plaintiff alleges 11 purported claims for relief, the crux of this dispute is over a single provision in the 1993 Amendment to the parties' 1987 Agreement. There is only one plausible interpretation of that provision: that Defendant dick clark productions, inc. ("dcp") has irrevocable options to produce the Golden Globe Awards Show so long as it successfully negotiates, and is able to obtain, an extension or renewal of its broadcast agreement with NBC. Plaintiff's interpretation is directly at odds with the plain meaning of the language and cannot justify admission of extrinsic evidence or delay in resolution of this central contract issue.

The parties' 1987 Agreement granted dcp irrevocable options to produce the Golden Globe Awards Show for five specific years, 1988 through 1992. The 1993 Amendment provides, similarly, that dcp shall have irrevocable options to produce the Golden Globe Awards Show for eight specific years, 1998 through 2005. But the 1993 Amendment also includes language granting dcp irrevocable options "for any extensions, renewals, substitutions or modifications" of dcp's agreement with NBC to broadcast the Golden Globe Awards Show. Relatedly, the 1987 Agreement granted dcp a right of first refusal, with negotiations specified to commence 30 days after the 1992 Awards Show broadcast. The 1993 Amendment in turn provides that such negotiations will commence *either* after the Awards Show in 2005 (the last of the 8 years of specified yearly options) "or the date of the broadcast of the last Awards under the NBC Agreement, *whichever is later*." The only plausible interpretation of these phrases is that if dcp can secure an extension of the NBC Agreement, then dcp receives irrevocable options.

In its Complaint, HFPA alleged that the fully integrated 1987 Agreement, as amended, included an unstated requirement that dcp obtain HFPA's approval for

1

**DEFENDANTS' REPLY MEMORANDUM<br>ISO MOTION TO DISMISS**

any extension of the NBC Agreement. (Compl. ¶ 123.) Presumably recognizing that California law does not allow additions to integrated agreements, HFPA has abandoned that argument. Instead, HFPA's core argument is now that the phrase "for any extensions, renewals, substitutions or modifications of the NBC Agreement" was included "to ensure that dcp would still have eight options despite the predictable uncertainties built into the NBC deal." (Opp. at 16; *see also id*. at 2, 7.) This is nonsense. HFPA never explains, because it cannot, how the phrase "and for any extensions [and] renewals . . . of the NBC deal" was intended to protect dcp from *losing* eight specific years of irrevocable options it had just been expressly granted. In fact, *without* the additional language, the 1993 Amendment clearly and unequivocally grants dcp eight options without regard to the NBC Agreement. HFPA's interpretation is inconsistent with the plain language of the 1993 Amendment and would render the additional language unnecessary surplusage. It must therefore be rejected as a matter of law.

## II.     ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). Here, the agreements already before the Court eviscerate HFPA's theory of the case.

The 1993 Amendment is clear. It unambiguously grants dcp options for the years "1998 through and including 2005, and for any extensions, renewals, substitutions or modifications of the NBC Agreement." The only plausible interpretation of this language is that dcp has options *beyond 2005* if the NBC

Agreement is extended or renewed beyond that year. Even under the most liberal view of the role of extrinsic evidence in contract interpretation, this is not a case where such extrinsic evidence could plausibly support any other interpretation. HFPA's interpretation is illogical and contradicted by both the text of the 1993 Amendment and the extrinsic evidence that allegedly exists.

### A.     **HFPA's Interpretation of the 1993 Amendment Is Implausible.**

"When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible to the interpretation urged by the party. If it is not, the case is over." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006) (internal quotation marks omitted). "The court is not required to accept implausible or semantically impermissible claims of meaning." *FPI Dev., Inc. v. Nakashima*, 231 Cal. App. 3d 367, 390 n.10 (1991); *see also Iqbal*, 129 S. Ct. at 1949.

HFPA's interpretation of the 1993 Amendment makes no sense. HFPA now claims that the 1993 Amendment granted options only through 2005, regardless of whether the NBC Agreement was extended beyond 2005, and that the phrase, "and for any extensions, renewals, substitutions or modifications of the NBC Agreement" was somehow added "to ensure that dcp would still have eight options despite the predictable uncertainties built into the NBC deal." (Opp. at 16.) That language would, however, be completely unnecessary to protect dcp from any supposed "uncertainties."

Any uncertainty arising because "the proposed NBC deal might begin in either 1994 (if TBS gave up its broadcast rights) or 1996 (if TBS did not), and might end in any of three different years—1998, 2001, or 2005" (Opp. at 6), was unambiguously covered by the 1993 Amendment's grant of *irrevocable* options for each of the years from 1998 through 2005, without regard to the NBC Agreement.[1]

---

[1] The 1989 Amendment (Def's RJN, Ex. A) already provided dcp with options to produce the Golden Globe Awards show from 1993 through 1997.

- 3 -                                                       DEFENDANTS' REPLY MEMORANDUM
                                                                          ISO MOTION TO DISMISS

1  "Since an agreement is interpreted as a whole, it is assumed in the first instance that
2  no part of it is superfluous." *Brinderson-Newberg Joint Venture v. Pac. Erectors,*
3  *Inc.*, 971 F.2d 272, 279 (9th Cir. 1992) (internal quotation marks omitted). Under
4  HFPA's interpretation, even assuming there were in fact uncertainties with respect
5  to the NBC Agreement, the addition of the phrase, "and for any extensions, renewals,
6  substitutions or modifications of the NBC Agreement," would have been totally
7  unnecessary and superfluous. The text of the 1993 Amendment is therefore not
8  "reasonably susceptible" to HFPA's interpretation, and such an interpretation must
9  be rejected as a matter of law. *See, e.g., id.* at 277-78; *Dore*, 39 Cal. 4th at 393.

10     Similarly, if HFPA were correct that dcp was granted options only through
11  2005—without regard to any extension or renewal of the NBC Agreement—the
12  language of the 1993 Amendment amending sections 1(a) and 1(b) to give dcp
13  exclusive negotiation rights and rights of first refusal through 2005 or the last NBC
14  broadcast, "whichever is *later*," also would be meaningless surplusage. This
15  provision unambiguously shows that the 1993 Amendment gave dcp options
16  through 2005 *and* for additional years if the NBC deal was extended further.

17     Even if the Court looks beyond the four corners of the parties' integrated
18  Agreement, which it need not, the proffered extrinsic evidence merely confirms that
19  HFPA's new "eight meant eight" interpretation (Opp. at 3) is nonsense. For
20  example, HFPA cannot explain where the additional six options for Awards Shows
21  after 2005, which HFPA concedes that dcp possessed, came from, if not from the
22  1993 Amendment. (Opp. at 8, 11.) The underlying Agreement between dcp and
23  HFPA requires any amendment to be in writing, yet HFPA has not alleged that
24  there was ever a written (or, for that matter, an oral) amendment granting dcp these
25  six additional options for Awards Shows from 2006 through 2011. Under HFPA's
26  interpretation, a further amendment would have been necessary; but, as dcp
27  contends, under the plain language of the 1993 Amendment, none was, because dcp
28  already had options for "any extensions, renewals, substitutions or modifications of

- 4 -  **DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS**

the NBC Agreement." The 2001 Exercise of Options confirms that this is the only plausible interpretation. Without reference to any further amendment, the 2001 Exercise of Options states that "the Agreement is *deemed extended for any extension of the NBC/dcp Agreement*" and exercises options that were available under the 1987 Agreement, as amended.

### B.   HFPA's Proposed Use of Extrinsic Evidence Would Contradict the Integrated Agreement.

Under California law, HFPA may not introduce extrinsic evidence to contradict the plain text of the 1993 Amendment. "The parol evidence rule . . . establishes that the terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements. In doing so, the rule necessarily bars consideration of extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the written agreement." *Casa Herrera v. Beydoun*, 32 Cal. 4th 336, 344 (2004); Cal. Code Civ. Proc. § 1856(a). "Testimony of intention which is contrary to a contract's express terms . . . does not give meaning to the contract: rather it seeks to substitute a different meaning." *Bionghi v. Metro. Water Dist. of So. Cal.*, 70 Cal. App. 4th 1358, 1369 (1999). Further, extrinsic evidence may not be used "to establish a collateral agreement or additional contract term." *Id.* at 1367-68.[2]

Even if it were considered, the extrinsic evidence alleged by HFPA could not possibly sustain its position. For example, HFPA alleges that (1) dcp represented

---

[2] HFPA misinterprets the scope of *Pacific Gas & Electric Co..* (Opp. at 14, 20.) "[T]he case is not an endorsement of linguistic nihilism. Despite what might be called its 'deconstructionist' dictum, the actual holding of the case is a fairly modest one: courts should allow parol evidence to explain *special* meanings which the individual parties to a contract may have given certain words. *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1793 (1993) (footnote omitted). HFPA also ignores cases cited by Defendants for the proposition that extrinsic evidence cannot be used to contradict a fully integrated contract or to assert generalized intent divorced from the specific words and phrases contained in the agreement. (Mot. to Dismiss at 14-18); *see also* Cal. Civ. Code § 1639.

that HFPA would be committed to dcp until only 2005 (Compl. ¶ 27), (2) HFPA subjectively believed it was committed until only 2005 (Compl. ¶ 28), and (3) dcp's interpretation of the 1993 Amendment is contrary to industry custom and practice (Compl. ¶ 29). But such extrinsic evidence would squarely contradict the 1993 Amendment, which provides that dcp has irrevocable options "through and including 2005, *and for any extensions, renewals, substitutions or modifications of the NBC Agreement*"; that dcp has exclusive negotiation rights for a period after the 2005 Awards Show "*or the broadcast of the last Awards under the NBC Agreement, whichever is later*"; and that dcp has a right of first refusal on the Awards Show for a period after "July 15, 2005, *or July 15 after the last broadcast of the Awards under the NBC Agreement, whichever is later.*" (Compl., Ex. C (emphases added).)[3] Because HFPA's alleged extrinsic evidence is squarely inconsistent with the plain language of the 1993 Amendment, it would be inadmissible and, therefore, it is of no legal consequence insofar as this motion is concerned. *E.g.*, *Casa Herrera*, 32 Cal. 4th at 344.

### C. The 1993 Amendment Is Valid Under California Law.

HFPA's suggestion that a contract of indefinite duration is inequitable or unreasonable (Opp. at 19-20) is contrary to California law. "California cases have long recognized that a contract may, by its express terms, provide for a term of duration of indefinite length and without specific limitation, tied not to the calendar

---

[3] HFPA's argument that "the language from the 1993 Amendment is nonsensical when it is dropped into the Awards Agreement" is meritless. (Opp. at 17-18.) The amendments to sections 1(a) and 1(b) of the Awards Agreement amended the entire "reference" to the 1997 dates in those respective provisions, not just the dates themselves. Obviously, the words at the ends of the two provisions ("Awards Presentation" and "whichever occurs first"), which HFPA includes in an effort to make the amendments sound nonsensical, are to be deleted. Nor does dcp's interpretation "render pointless" the first-negotiation and first-refusal rights in the 1987 Agreement or the NBC Agreement. (Opp. at 18.) Those provisions in the 1987 Agreement continue to protect dcp's rights in the event the NBC Agreement is *not* extended or renewed, and in the NBC Agreement they protect NBC against dcp's negotiating with another network.

- 6 - **DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS**

but to the conduct of the contracting parties." *Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*, 80 Cal. App. 4th 1, 7 (2000) (citing examples). "The important factor, then, is not whether the contract fails to specify a termination date, but whether there is an ascertainable event which necessarily implies termination." *Lura v. Multaplex, Inc.*, 129 Cal. App. 3d 410, 414-15 (1982). The 1987 Agreement, as amended in 1993, terminates in 2005 or the year of "*the broadcast of the last Awards under the NBC Agreement, whichever is later.*" HFPA cannot credibly argue that such a date is not ascertainable.[4]

### D.  dcp's Options Were Not Revocable.

HFPA's argument in the alternative—that dcp had options for the duration of the NBC Agreement, but that those options were revoked—is likewise meritless. An option, by definition, is not revocable. 1 WILLISTON ON CONTRACTS § 5:16 (4th ed. 2010) ("During the option period the irrevocable offer . . . . cannot be unilaterally withdrawn."). An option requires only nominal consideration. *See, e.g.*, *Wheat v. Morse*, 197 Cal. App. 2d 203, 206-07 (1961) ("The law, however, is firmly fixed that '[A]n option given for a consideration, however small, is irrevocable and cannot be terminated, without the consent of the other party during the time named in the option.'" (quotation omitted, citing cases); *Chrisman v. So. Cal. Edison Co.*, 83 Cal. App. 249, 254 (1927) (finding consideration of $1 sufficient to make an irrevocable option contract). Here, it is clear from the face of the Complaint and the parties' agreements—which provide that dcp would negotiate and secure a broadcast commitment from NBC (Compl. ¶ 25 & Exs. B ¶ 2, C) and would account for profits generated under the NBC Agreement (half of which would be paid to HFPA) (Compl. ¶¶ 23, 87 & Ex. B ¶¶ 3-5)—that HFPA received substantial consideration for the options it granted in 1993. In addition, part performance under an agreement constitutes consideration. *See, e.g.*, *Steiner v.*

---

[4] The cases and code sections HFPA cites (*see* Opp. at 19-20) are inapplicable in this case because the contractual provision at issue is unambiguous.

*Thexton*, 48 Cal. 4th 411, 422 (2010). Here, the parties have performed under the 1993 Agreement for over seventeen years.

HFPA has failed to explain how it could revoke options that are "exclusive" and "irrevocable" and were given to dcp "for any extensions, renewals, substitutions or modifications of the NBC Agreement." (Compl., Ex. C.) The only case cited by HFPA for its assertion that "[l]abeling an option as irrevocable will not suffice" (Opp. at 11) did not involve an option labeled as either irrevocable or exclusive. *See Torlai v. Lee*, 270 Cal. App. 2d 854 (1969). The *Torlai* court merely found revocable a conditional proposal that respondent conceded was no more than a solicitation of an offer. *Id.* at 856-58. Further, HFPA may not rely on extrinsic evidence to allege that an *irrevocable* option was actually *revocable*. *See, e.g.*, *Bionghi*, 70 Cal. App. 4th at 1364; *see also* Part II.B, *supra*.

Finally, HFPA is incorrect that dcp needed to provide additional consideration to exercise its later options. (*See* Opp. at 12.) Each individual option need not have independent consideration as long as the offeree provides consideration for the option contract as a whole. *See, e.g.*, *Glascock v. Sukumlyn*, 131 Cal. App. 2d 587, 594 (1955) (explaining that an option agreement with automatic extensions of the option period did not become an ordinary offer without consideration at end of the first option period). In any event, each year the contract was extended, dcp was obligated to share profits with HFPA.

### E. The 1999 Pre-Show Agreement Is Still in Effect.

HFPA ignores another unambiguous contract term in its effort to escape its obligations under the 1999 Pre-Show Agreement. The 1999 Pre-Show Agreement could not be clearer about its duration:

> *So long as NBC is the broadcaster of the Awards Program and HFPA has licensed the Awards Program to dcp, (a) if HFPA does a preview show, it shall be with dcp and NBC,*
> and (b) if HFPA decides not to do a preview show with dcp

- 8 -

1           and NBC, HFPA shall not do a preview show with any other
2           producer or network. All future preview shows with dcp and
3           NBC shall be pursuant to the terms of this Agreement.

(Compl., Ex. D ¶ 6 (emphasis added).)

      HFPA focuses on paragraph 1 of the Pre-Show Agreement, in which HFPA grants dcp irrevocable options to produce a pre-show program in years 2000 and 2001 and, upon amendment to paragraph 1, in years 2002 through 2006. (Opp. at 22.) HFPA claims that this paragraph means that the Pre-Show Agreement expired after the last of these options in 2006. But that reading ignores paragraph 6 of the Pre-Show Agreement, which unambiguously states that, in the years after those for which HFPA had, in paragraph 1, already granted dcp the irrevocable right to produce a pre-show, *if HFPA elects to do a pre-show program* it must be with dcp and NBC. (Compl., Ex. D ¶ 6; Pl.'s RJN, Ex. E); *see* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part . . . ."). The amendments to the Pre-Show Agreement, granted to dcp (under paragraph 1 of the agreement) irrevocable rights to produce a pre-show in certain additional years beyond 2001, thereby removing HFPA's discretion (under paragraph 6) to decide not to do a pre-show at all in those years.[5] Nothing about those amendments altered the fact that, under paragraph 6, *so long as NBC broadcasts the Awards Show*, HFPA may not do a pre-show except with dcp and NBC.[6]

---

[5] The use of the words "reinstated and extended" in the amendments to the Pre-Show Agreement (Opp. at 22) does not show that the Pre-Show Agreement had "expired." *See* Cal. Civ. Code § 3541 ("An interpretation which gives effect is preferred to one which makes void."). HFPA misrepresents the facts with respect to the 2010 pre-show, claiming that dcp and HFPA did not operate under the 1999 Pre-Show Agreement with respect to that show. Moreover, HFPA fails to disclose to the Court that, in agreeing to move forward on the 2011 pre-show *in the face of the pending lawsuit*, dcp and HFPA agreed to an express reservation of their respective rights with respect to the 1999 Agreement.

[6] Notably, HFPA does not allege any extrinsic evidence to support its claim that the Pre-Show Agreement expired. Even if HFPA did offer extrinsic evidence, it could not be used to contradict or supplement the plain terms of the fully integrated Pre-Show Agreement. *See* Part II.B, *supra*; (Compl., Ex. D ¶ 7 (integration clause)).

### F. HFPA Fails to State a Claim for Reformation.

HFPA's reformation claim seeks to "reform" the parties' 1993 Amendment in a way that is inconsistent not only with the plain language of the amendment but also with HFPA's own current interpretation of that language. HFPA alleges that the words, "with HFPA's approval," should be added, but that is no longer the meaning that even HFPA contends the 1993 Amendment was intended to have. For that reason alone, the claim should be dismissed.

In any event, HFPA has not alleged facts that, taken as true, would toll the statute of limitations on its reformation claim. HFPA's reliance on *Jefferson v. Pietroroia*, 5 Cal. 2d 222 (1936), which involved a scrivener's error that inadvertently omitted an agreed-upon interest provision, is misplaced. *Jefferson* stands for the narrow proposition that "where the parties, by their actions, consistently construe a contract in a manner that conflicts with its plain meaning, the time to seek reformation does not begin to run until one of the parties repudiates the past construction and elects to rely on the plain meaning of the contract terms." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1549 n.13 (9th Cir. 1990) (interpreting *Jefferson*).

Here, there is no scrivener's or clerical error, and Defendants never did or said anything that conflicted with the plain meaning of the disputed contract provision; accordingly, *Jefferson* is inapplicable. *See Hal Roach Studios*, 896 F.2d at 1549 ("Under these circumstances, we see no reason to depart from the general rule that a cause of action for reformation accrues when a party discovers that an actual conflict exists between the written terms of the agreement and the alleged mutual intent of the parties.").[7] Thus, dismissal as a matter of law is appropriate

---

[7] HFPA's reliance on a pair of insurance cases is similarly misplaced. (*See* Opp. at 23.) For example, *Schaefer v. California-Western States Life Ins. Co.*, 262 Cal. App. 2d 840 (1968), involved reformation of an insurance contract where a clerical error resulted in the inadvertent attachment of the wrong premium. In the case at hand, HFPA has alleged no scrivener's or clerical error that omitted the words "with HFPA's approval" from the 1993 Agreement or other operative document

- 10 -　　　　　DEFENDANTS' REPLY MEMORANDUM
　　　　　　　　ISO MOTION TO DISMISS

because the "complaint shows on its face that it is barred by a statute of limitations." *McGee v. Weinberg*, 97 Cal. App. 3d 798, 802 (1979).

Finally, HFPA argues that Defendants are estopped from raising the statute of limitations. (*See* Opp. at 23.) But HFPA fails to allege facts that, even if taken as true, would support a finding of estoppel. *See Kunstman v. Mirizzi*, 234 Cal. App. 2d 753, 755, 757 (1965) (stating that a demurrer may be granted where the complaint fails to allege sufficient facts to estop defendants from relying on the statute of limitations, and that the law does not favor a finding of estoppel). HFPA argues that Defendants' good-faith negotiations "lulled HFPA into believing that the parties' shared understanding was still operative." (Opp. at 23.) But, the only "good-faith negotiations" alleged in the Complaint occurred in 2010 (Compl. ¶¶ 42-47), some seventeen years after the three-year limitations period began to run. Such negotiations, conducted long after the limitations period had lapsed, may not be used to show that Defendants induced the belated filing of the action, as needed to sustain an estoppel claim.

In sum, the words "with HFPA's approval" never appeared in the parties' agreements (and, of course, HFPA has abandoned any contention that they should have). Had the words been mistakenly omitted from the 1993 Agreement, HFPA should have sought reformation then or, at the very latest, when the 2001 Exercise of Options again omitted the same language. The limitation period has long since run, and HFPA's Eleventh Claim for Relief should be dismissed with prejudice.

### G.  **HFPA Fails to State a Claim for Breach of Fiduciary Duty.**

In its Opposition, HFPA improperly conflates the existence of a fiduciary duty with breach of that duty. HFPA seeks to distinguish cases that were cited by Defendants for the proposition that no fiduciary duty exists here on the basis that

---

executed by both parties. (*See* Compl. ¶ 123.) *Laing v. Occidental Life Ins. Co. of Cal.*, 244 Cal. App. 2d 811 (1966), involved an insurance-contract exception to the presumption that parties to a written contract are familiar with its terms. No such exception applies here.

- 11 -  **DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS**

the nature of the *breaches* (failures to pay) were different in those cases. (Opp. at 24 n.18, 25.) In doing so, Plaintiff misses the point. The cases cited by Defendants demonstrate that there is no *fiduciary relationship* in cases where, under the exact circumstances that HFPA alleges, one party entrusts intellectual property rights to another. *See, e.g., City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008) (holding that an agreement to develop, patent, and commercially exploit a secret scientific discovery does not create a fiduciary relationship); *Wolf v. Super. Ct.*, 107 Cal. App. 4th 25, 27-28 (2003) (finding that the entrustment of intellectual property to another for commercial development does not create a fiduciary relationship).

      There is no reason here to depart from the general rule that arms-length contractual agreements—including a contract, such as the one alleged here by HFPA, entrusting one party's trademarks or intellectual property to another—do not give rise to an action for breach of fiduciary duty. *See, e.g., Portney v. CIBA Vision Corp.*, No. SACV 07-0854 AG, 2008 WL 5505517, at *3-4 (C.D. Cal. July 17, 2008); *City of Hope*, 43 Cal. 4th at 387-92. This case does not involve "copyrightable plans" that have not yet been copyrighted, *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1220 (E.D. Cal. 2004), a "secret invention" that has not yet been patented, *Stevens v. Marco*, 147 Cal. App. 2d 357, 377 (1956), or other confidential information. *See Portney*, 2008 WL 5505517, at *4 (identifying factors not alleged in HFPA's Complaint, such as lack of sophistication and bargaining power, equitable concerns, or secrecy of information, that could bear on whether a fiduciary relationship exists).

      Respectfully submitted,

Dated: February 21, 2011      By:    */s/ Bradley S. Phillips*
                                                       BRADLEY S. PHILLIPS

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: February 21, 2011

                                                          /s/ *Bradley S. Phillips*
                                                          BRADLEY S. PHILLIPS